# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TRACY RANDELL COX-WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-14-089-KEW |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Tracy Randell Cox-Williams (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on October 19, 1971 and was 40 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a certified nurse's aide, medication aide, home health aide, stocker in an auto parts store, delivery driver for an auto parts store, and accounting assistant for the Choctaw Nation. Claimant alleges an inability to

work beginning March 1, 2010 due to limitations resulting from a tumor on her spine, nerves, diabetes, and asthma.

## Procedural History

On August 11, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On August 23, 2012, an administrative hearing was held before Administrative Law Judge ("ALJ") Gene M. Kelly in Tulsa, Oklahoma. He issued an unfavorable decision on August 30, 2012. The Appeals Council denied review of the ALJ's decision on January 7, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to perform a proper assessment at steps four and five; (2) failing to

4

properly evaluate the medical and non-medical source evidence; and (3) failing to perform a proper credibility determination.

### Step Four and Five Evaluation

In his decision, the ALJ found Claimant suffered from the severe impairments of degenerative disc disease of the cervical and lumbar spine with chronic pain, shoulder pain, diabetes, asthma, depression, anxiety, headaches, weakness of the hands and legs, and heart problems. (Tr. 262). The ALJ determined Claimant retained the RFC to perform light work, except she was limited to occasional climbing, bending, stooping, crouching, crawling, squatting, kneeling, and reaching in all directions. She had slight limitations in her ability to finger, feel, and grip. The ALJ found Claimant must avoid temperature extremes, dust, fumes, gases, rough and uneven surfaces, heights, and fast or dangerous machinery. Claimant required an environment with low noise and low light and easy access to restrooms. Claimant was also limited by the ALJ to simple, routine, repetitive tasks and slightly limited contact with the public. (Tr. 264). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of clerical mailer, optical goods assembler, and medical products assembler, all of which the vocational expert testified existed in sufficient numbers nationally and regionally. (Tr. 268-69). The ALJ, therefore, concluded Claimant was not disabled. (Tr. 269).

5

Claimant first contends the ALJ erred at step five by identifying jobs which she could not perform considering the limitations reflected in her RFC. The vocational expert identified three representative jobs in the *Dictionary of Occupational Titles* ("DOT") - clerical mailer (DOT § 209.587-010); optical goods assembler (DOT § 713.687-018); and medical products assembler (DOT § 712.687-018). A review of the DOT indicates that each of these occupations requires frequent reaching. The ALJ specifically limited Claimant to only occasional reaching in all directions. (Tr. 264).

Before an ALJ may rely upon the testimony of a vocational expert at step five, he "must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony. . . ." Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999). In this instance, the vocational expert erroneously testified that his testimony did not deviate from the DOT in a way which required explanation. (Tr. 306). On remand, the ALJ shall elicit testimony from the vocational expert to explain the apparent deviation from the DOT in identifying representative jobs which Claimant can perform at step five.

**Evaluation of Source Evidence**

Claimant contends the ALJ failed to adequately explain the

6

basis for rejecting the opinion of her treating physician, Dr. Paul Hobbs. Dr. Hobbs completed an RFC assessment form on August 22, 2012. He determined Claimant could sit, stand, and walk for two hours at a time in an eight hour workday; sit for six hours, stand for three hours, and walk for two hours total in an 8 hour workday; and occasionally lift up to 20 pounds and frequently carry up to five pounds and occasionally carry up to 20 pounds. (Tr. 601). Dr. Hobbs also determined Claimant could not use her feet for repetitive movements such as pushing and pulling leg controls. She could occasionally bend, squat, reach, handle, and finger but never crawl or climb. Claimant had a moderate restriction in being around moving machinery and being exposed to dust, fumes, and gases and a complete restriction in working at unprotected heights. Dr. Hobbs estimated Claimant could not perform a job on a sustained and continuing basis. He based this opinion upon Claimant's untreated cervical stenosis which he considered "severe." Her "weakness, parasthesis, pain, and pain meds" would all have an impact upon her ability to work on a daily sustained basis." (Tr. 602).

Dr. Hobbs found Claimant's impairments would interfere with her ability to engage in work that required a consistent pace of production and her medication would impose a moderate limitation upon Claimant's ability to concentrate. Dr. Hobbs also opined that Claimant's condition would pose a distraction from any job tasks and

7

would prevent her from completing any such tasks in a timely manner. He estimated Claimant would be absent from work more than three times a month, "if it was a physical oriented workplace." He also believed Claimant's "strong narcotics" medication would interfere with her ability to concentrate or reason effectively. (Tr. 603). In his narrative, Dr. Hobbs recognized Claimant's complaints of weakness in both extremities and severe cervical spondylosis that needed to "be dealt with as soon as possible to stop progressive neuro-muscular deterioration." He found her work performance evaluation to be difficult to determine without having more observations and input from a neurology specialist. (Tr. 604).

In his decision, the ALJ gave Dr. Hobbs' opinion "partial weight," asserting it was without substantial support from other evidence of record. The contradictory evidence cited by the ALJ included Dr. Hobbs' treatment records – which the ALJ contends only demonstrated gait abnormalities but none of the restrictions found in his functional assessment nor medication side effects. The ALJ also cited to Dr. Patel's records which he indicated showed Claimant was tolerating her pain medications well with no side effects. (Tr. 267).

Dr. Hobbs' records indicate bilateral neck pain and diffuse arm and neck pain. (Tr. 591). He prescribed oxycodone, Cymbalta, and Aleve. (Tr. 595). In December of 2011, Dr. Hobbs found Claimant

8

to have weakness in both hands, bilateral sharp pain in her legs, and abnormal gait and station. (Tr. 600).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion

9

and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

Although the ALJ concluded Dr. Hobbs' opinion conflicted with his treatment records and those of Dr. Patel, he concluded the RFC assessment offered by Dr. Hobbs was entitled to "partial weight". This Court is uncertain what portion of Dr. Hobbs' opinion is given weight and the portion that is given no weight. Although the ALJ states Dr. Hobbs' records do not indicate the level of restriction found by him in his assessment, the limited nature of the records do not lend themselves to providing the detailed information the

10

ALJ is requiring. Again, the ALJ does not indicate which portionso of Dr. Hobbs' opinion is given "partial weight" and which portions are conflicted by Dr. Hobbs' or Dr. Patel's records and given discounted weight. On remand, the ALJ shall re-evaluate Dr. Hobbs' opinion and set forth which portions of the opinion are given weight and which portions he is discounting in order for this Court to properly assess his evaluation.

Claimant also contends the ALJ failed to give consideration to the third party report offered by a friend, Clyde Qualls, and by the agency clerk who found Claimant appeared in pain. (Tr. 411; 429-36). Given the ALJ's discounting of Claimant's credibility, he should have noted and considered these opinions which largely support Claimant's claims of limitation. On remand, the ALJ shall at least evaluate these opinions in light of their conformity with Claimant's testimony of limitation.

### Credibility Determination

The ALJ cited Claimant's testimony concerning her level of pain and limitation. (Tr. 264-65). It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province

11

of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. It must be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

Since the ALJ will be reassessing the treating physician's opinion as well as third party statements, he should re-evaluate the consistency of this evidence with Claimant's testimony to determine

whether his credibility assessment should be modified.  If he maintains his determination on credibility, he should align his analysis with the factors referenced above.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied.  Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 24th day of September, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE